No. 23-10126-J

_____

# United States Court of Appeals
# for the Eleventh Circuit

NORTH AMERICAN SUGAR INDUSTRIES INC.,

*Plaintiff-Appellant,*

v.

XINJIANG GOLDWIND SCIENCE & TECHNOLOGY CO., LTD.,
GOLDWIND INTERNATIONAL HOLDINGS (HK) LTD., DSV AIR & SEA
INC., BBC CHARTERING USA, LLC, and
BBC CHARTERING SINGAPORE PTE LTD.,

*Defendants-Appellees.*

On Appeal from the United States District Court,
Southern District of Florida, Case No. 1:20-cv-22471-DPG

**ANSWER BRIEF OF APPELLEES BBC CHARTERING USA, LLC,
AND BBC CHARTERING SINGAPORE PTE LTD.**

Christopher S. Carver
Pedro A. Freyre                          Martin Domb
AKERMAN LLP                          AKERMAN LLP
Three Brickell City Centre            1251 Avenue of the Americas
98 S.E. Seventh Street – Suite 1100   37th Floor
Miami, FL 33131                       New York, NY 10020
(305) 374-5600                        (212) 880-3800

*Counsel for Appellees*
*BBC Chartering USA, LLC, and BBC Chartering Singapore Pte Ltd.*

No. 23-10126-J

*N. Am. Sugar Indus. Inc. v. Xinjiang Goldwind Sci. & Tech. Co., Ltd.*

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

**Interested Persons**

Akerman LLP

Apollo Global Management, Inc. (NYSE: APO)

Azucar Holdings, LLC

Balmori, Daniel, Esq.

BBC Chartering & Logistic GmbH & Co. KG

BBC Chartering Carriers GmbH & Co. KG

BBC Chartering Singapore PTE Ltd.

BBC Chartering, USA, LLC

BBC Global GmbH & Co. KG

Beeber, Jessie E., Esq.

BERA GmbH & Co. KG

Boyle, Patrick J., Esq.

BREB GmbH & Co. KG

Briese, Roelf

Briese Chartering GmbH & Co. KG

Briese Schiffahrts GmbH & Co. KG

Briese Crew Management GmbH

Briese Shipping BV

No. 23-10126-J

*N. Am. Sugar Indus. Inc. v. Xinjiang Goldwind Sci. & Tech. Co., Ltd.*

Brochin, Robert M., Esq.

Carver, Christopher Stephen, Esq.

Christiansen, Jeremy M., Esq.

Cohen, Sarah Jayne, Esq.

Cuban-American Mercantile Corporation

Cuyler, Reginald, Jr., Esq.

de Almagro, Natalie Maria, Esq.

Domb, Martin, Esq.

DSV Air & Sea A/S

DSV Air & Sea Holding A/S

DSV Air & Sea Holding, Inc.

DSV Air & Sea Inc.

DSV A/S

DSV Panalpina A/S

DSV Ocean Transport A/S

Emden Port Agency & Stevedoring Service Beteiligungs GmbH & Co. KG

Ems Offshore Service GmbH & Co. KG

Estrada, Miguel A., Esq.

Freyre, Pedro Armando, Esq.

Gayles, Darrin P., Honorable

No. 23-10126-J

*N. Am. Sugar Indus. Inc. v. Xinjiang Goldwind Sci. & Tech. Co., Ltd.*

Gibson, Dunn & Crutcher LLP

Goldman Sachs Group, Inc. (NYSE: GS)

Goldwind International Holdings (HK) Ltd., (002202 listed on the SZSE,

2208 listed on the HKEX )

Hexion LLC

Hogan Lovells, LLP

JPMorgan Chase Bank, N.A.

JPMorgan Chase & Co. (NYSE: JPM)

Leto Law Firm

Leto, Matthew, Esq.

Lee, Casey Kyung-Se, Esq.

Lorenzo, Richard, Esq.

Mandel & Mandel LLP

Mandel, David S., Esq.

Mandel, Nina Stillman, Esq.

Marotta, Sean, Esq.

McIntosh, Elizabeth G., Esq.

Meltzer, Jason R., Esq.

Moloo, Rahim, Esq.

Morgan, Lewis & Bockius LLP

No. 23-10126-J

*N. Am. Sugar Indus. Inc. v. Xinjiang Goldwind Sci. & Tech. Co., Ltd.*

Neuman, Andrea E., Esq.

North American Sugar Industries, Inc.

Northsea GmbH

Otazo-Reyes, Alicia M., Honorable

Papkin, Matthew Michael, Esq.

Paull, Ben, Esq.

Pegg, Allen Paige, Esq.

Royal Dutch Shell plc

SEC GmbH & Co. Shipservices KG

Shell Oil Company

Shell plc (NYSE: SHEL)

Stempel, Danielle Desaulniers, Esq.

Sun, Timothy, Esq.

Surgeon, Naim Shakir, Esq.

Syarief, Audi K., Esq.

Talley, Christian, Esq.

United Fuel Services GmbH & Co. KG

Valenstein, Carl A., Esq.

Vassos, John M., Esq.

Venable LLP

No. 23-10126-J

*N. Am. Sugar Indus. Inc. v. Xinjiang Goldwind Sci. & Tech. Co., Ltd.*

West India Company

Williamson, Brian, Esq.

Xinjiang Goldwind Science & Technology Co., Ltd. (002202 listed on the SZSE,

2208 listed on the HKEX )

## Corporate Disclosure Statement

Appellee BBC Chartering USA, LLC is a privately owned limited liability

corporation, incorporated and headquartered in Texas, whose sole member is BBC

Global GmbH & Co. KG ("BBC Global"). BBC Global is solely owned by

Northsea GmbH, which is solely owned by Rolfe Briese, an individual. No

publicly held corporation owns any of BBC Chartering USA, LLC's stock.

Appellee BBC Chartering Singapore PTE Ltd. is a privately owned

corporation, incorporated and headquartered in Singapore, whose sole member is

BBC Global. No publicly held corporation owns any of BBC Chartering Singapore

PTE Ltd.'s stock.

## STATEMENT REGARDING ORAL ARGUMENT

Appellees BBC Chartering USA, LLC ("BBC USA") and BBC Chartering
Singapore Pte Ltd. ("BBC Singapore") submit that oral argument is not necessary
because the applicable legal principles are well established and no clear error can
be shown with respect to the district court's factual determinations.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS

AND CORPORATE DISCLOSURE STATEMENT ................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

TABLE OF CONTENTS ..................................................................... ii

TABLE OF CITATIONS .......................................................................v

STATEMENT REGARDING ADOPTION

OF BRIEFS OF OTHER PARTIES................................................ ix

INTRODUCTION ...............................................................................1

STATEMENT OF THE ISSUES ..............................................................6

STATEMENT OF THE CASE ................................................................7

Course of Proceedings and Disposition in the Court Below ..........................7

Statement of the Facts ...................................................................10

Background Facts..................................................................10

Specific Facts Relating to BBC USA .................................................17

Specific Facts Relating to BBC Singapore .........................................19

STANDARD OF REVIEW....................................................................22

SUMMARY OF THE ARGUMENT ....................................................24

ARGUMENT....................................................................................26

I.    BBC USA WAS PROPERLY DISMISSED

FOR LACK OF PERSONAL JURISDICTION ............................................27

A. NASI Failed – and Fails – to Show That BBC USA's

Actions Fell Within the Ambit of Florida's Long-Arm Statute .......... 27

B. NASI Failed – and Fails – to Show That Exercising Personal

Jurisdiction over BBC USA Would Satisfy Due Process ................... 33

II. BBC SINGAPORE WAS ALSO PROPERLY DISMISSED

FOR LACK OF PERSONAL JURISDICTION ........................................... 35

A. Similarly, NASI Failed – and Fails – to Show That BBC

Singapore's Actions Fell Within the Ambit of Florida's

Long-Arm Statute ................................................................................ 35

B. NASI Likewise Failed – and Fails – to Show That

Exercising Personal Jurisdiction over BBC Singapore Would

Satisfy Due Process or Would Be Proper under Rule 4(k)(2) ........... 37

III. THE CONSPIRACY CLAIM DOES NOT CONFER PERSONAL

JURISDICTION OVER EITHER BBC DEFENDANT ............................... 40

A. NASI Waived and Failed to Preserve Its Conspiracy Theory ........... 40

B. Even If NASI Could Argue Its Conspiracy Theory,

NASI Fails – and Failed – to Meet Its Burden of Showing

the Theory Creates Jurisdiction .......................................................... 41

C. NASI Faces an Independent – and Dispositive – Problem:

The Conspiracy Claim Is Barred by the Helms-Burton Act .............. 49

CONCLUSION ..................................................................................................50

CERTIFICATE OF COMPLIANCE......................................................................51

CERTIFICATE OF SERVICE ..............................................................................52

# TABLE OF CITATIONS

## Cases

*Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302 (S.D. Fla. 2014).............. 42-43

*April Indus., Inc. v. Levy*, 411 So. 2d 303 (Fla. 3d DCA 1982) ........................ 44-45

*AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*,

608 F. Supp. 2d 1349 (S.D. Fla. 2009)...........................................................47

*Banco Latino Int'l v. Gomez Lopez*,

95 F. Supp. 2d 1327 (S.D. Fla. 2000)..............................................................42

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)......................................................43

*Birmingham v. RoFx.net*, No. 21-cv-23472,

2022 WL 1686683 (S.D. Fla. May 26, 2022) .................................................42

*Burger v. Hartley*, 896 F. Supp. 2d 1157 (S.D. Fla. 2012)......................................47

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................... 33-35

*Calder v. Jones*, 465 U.S. 783 (1984) ......................................................................34

*Churruca v. Miami Jai-Alai, Inc.*, 353 So. 2d 547 (Fla. 1997) ..............................42

*Condor, S.A. v. Plurinational State of Bolivia*,

352 So. 3d 921 (Fla. 3d DCA 2022) ..............................................................44

*Daimler AG v. Bauman*, 571 U.S. 117 (2014).........................................................27

*Del Valle v. Trivago GMBH,* 56 F.4th 1265 (11th Cir. 2022)........................ *passim*

*Don't Look Media LLC v. Fly Victor Ltd.*,

999 F.3d 1284 (11th Cir. 2021)......................................................................22

*Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir. 2011) .............22, 30

*Dupree v. Warden*, 715 F.3d 1295 (11th Cir. 2013)................................................22

*Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*,

    752 So. 2d 582 (Fla. 2000) ..................................................... 46-47

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,

    141 S.Ct. 1017 (2021) ............................................................ 37-38

*Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143 (Fla. 3d DCA 2007) ............... 27-28

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) .............29

*Herederos de Roberto Gomez Cabrera, LLC v. Teck Resources Ltd.*,

    43 F.4th 1303 (11th Cir. 2022).................................................33, 38

*In re Pan Am. World Airways, Inc.*,

    905 F.2d 1457 (11th Cir. 1990).............................................22-23, 30, 40-41

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) ........................................38

*Koch v. Royal Wine Merchs., Ltd.*,

    907 F. Supp. 2d 1332 (S.D. Fla. 2012)..................................... 41-42

*Louis Vuitton Malletier, S.A. v. Mosseri*,

    736 F.3d 1339 (11th Cir. 2013)................................................. 22, 28, 32-33

*Machtinger v. Inertial Airline Servs., Inc.*,

    937 So. 2d 730 (Fla. 3d DCA 2006) ...........................................................47

*Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852 (11th Cir. 2013).................33

*Miller v. King*, 449 F.3d 1149 (11th Cir. 2006)......................................41

*Narey v. Dean*, 32 F.3d 1521 (11th Cir. 1994)....................................41

*NHB Advisors, Inc. v. Czyzyk*, 95 So. 3d 444 (Fla. 4th DCA 2012)......................47

*Oldfield v. Pueblo De Bahia Lora, S. A.*, 558 F.3d 1210 (11th Cir. 2009) .............37

*Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306 (11th Cir. 2013)........................22

*Russo v. Fink*, 87 So. 3d 815 (Fla. 4th DCA 2012) ...........................................43, 45

*Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623 (11th Cir. 1996)....................27

*United States v. Schultz*, 565 F.3d 1353 (11th Cir. 2009) .......................................27

*\*United Techs. Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009)................ 33, 43-44

*Waite v. All Acquisition Corp.*, 901 F.3d 1307 (11th Cir. 2018)............................38

*Walden v. Fiore*, 571 U.S. 277 (2014)....................................................................39

*Wendt v. Horowitz*, 822 So. 2d 1252 (Fla. 2002) ...................................................28

*Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389 (11th Cir. 1988) ..................32

**Statutes**

Cuban Liberty and Democratic Solidarity Act (LIBERTAD) Act

("Helms Burton Act"), 22 U.S.C. § 6021, *et seq.* .................................. *passim*

22 U.S.C. § 6023(13) ..............................................................................30, 48

22 U.S.C. § 6023(15) ....................................................................................48

22 U.S.C. §§ 6081-6085 (Title III)................................................................7

22 U.S.C. § 6082(a)(1)(A) ............................................................................48

22 U.S.C. § 6082(f) .................................................................49

*Fla. Stat. § 48.193(1)(a)(2) ........................................... *passim*

**Rules**

Rule 4(k)(2), Federal Rules of Civil Procedure..................... vii, 6, 37, 39

Rule 12(b)(6), Federal Rules of Civil Procedure............................... 48-49

11th Cir. R. 3-1 .......................................................9, 22, 41

## STATEMENT REGARDING ADOPTION
## OF BRIEFS OF OTHER PARTIES

BBC Singapore adopts Point III – *First* from the Response Brief for

Defendants-Appellees Xinjiang Goldwind Science & Technology Co. Ltd., and

Goldwind International Holdings (HK) Ltd., concerning North American Sugar,

Inc.'s ("NASI") having forfeited its Rule 4(k)(2) argument.

## INTRODUCTION

Appellant NASI seeks to overturn the district court's dismissal for lack of personal jurisdiction. After extensive jurisdictional discovery, the magistrate judge issued a well-reasoned and well-supported report and recommendation. The district court correctly adopted the report and recommendation after considering NASI's objections, which largely merely rehashed its prior arguments. NASI's appeal should be rejected and the dismissal should be upheld.

NASI has zero connection to Florida; similarly, appellees BBC Singapore and BBC USA have zero connection to Florida. In fact, the *only* connection of any defendant to Miami is a small office of appellee DSV Air and Sea Inc. ("DSV-US"), which office had a tangential (at most) involvement in the events at issue. The jurisdictional "hook" argued by NASI is the happenstance that two shipments of wind turbine blades passed through the Port of Miami on their way to docking at the Cuban port allegedly confiscated from NASI. The 5-hour stops in Miami (a) were *not* selected by any defendant and (b) as NASI expressly admitted in the district court, were *not* necessary – because any U.S. port would have sufficed – and, thus, were *not* essential to the shipments, much less "substantial" aspects of the claimed Helms-Burton Act violation. Accordingly, there was no basis for personal jurisdiction in the Southern District of Florida, as the district court correctly ruled.

Seeking to avoid these facts, NASI takes two tacks, both of which fail:

*First*, it concocts the colorful term "BIS Loophole Scheme" – which it never used in the district court and coined for this appeal – as an irrelevant distraction to invent a non-existent "conspiracy" in the hope of creating personal jurisdiction. Notably, NASI barely mentioned the supposed conspiracy in its objections to the report and recommendation, and thereby waived the argument. Moreover, even accepting NASI's specious contentions as true, NASI's argument fails because *NASI* is not alleged to be the target of the alleged "conspiracy." To the extent the argument is understandable, the target was either the U.S. Government or an unrelated BBC Singapore customer (McDermott) – and NASI has no standing to make any claim based on a supposed conspiracy of which it was not the target.

The record shows the decision to seek clearance of the cargoes of wind turbine blades was made, *not* by any appellee (and categorically not by either BBC Appellee), but rather by non-party General Electric Company ("GE"), the blades' manufacturer, whose regulatory in-house counsel certified that doing so ensured compliance with the U.S. Cuba embargo regulations. NASI does not assert a claim for violation of those regulations (nor would it have standing to do so); its suggestion that the shipments may have violated those regulations therefore is irrelevant. And, NASI's suggestion is refuted by the facts: U.S. Customs in Miami expressly cleared the blades for delivery to Puerto Carupano, Cuba, which proves,

as GE had certified in advance, that the shipments in fact complied with the Cuba sanctions regulations.

*Second*, NASI premises its legal arguments almost entirely on this Court's decision in *Del Valle v. Trivago GMBH,* 56 F.4th 1265 (11th Cir. 2022), which NASI cites more than 50 times. NASI incorrectly asserts that the magistrate judge's report and recommendation was "superseded" by *Del Valle* and that the district court "misconstrued and misread" it. Op.Br. at 25, 30. Both contentions are wrong. *Del Valle* was not a "novel" interpretation of Florida or federal personal jurisdiction principles; it simply addressed those well-established principles in the context of a Helms-Burton Act claim – which is the only thing *Del Valle* and this case have in common. However, in sharp contrast to the extensive jurisdictional discovery which provided the foundation for the report and recommendation and the district court's adoption of the report on appeal here, the personal jurisdiction challenge in *Del Valle* "was facial and not factual." 56 F.4th at 1271.

The *Del Valle* plaintiffs were (allegedly) Florida residents. *Id.* at 1277. As a result of those defendants' decision not to challenge the allegations through affidavits or other evidence, the "facts" as alleged were accepted as true – including that the online hotel-booking defendants maintained offices in Florida, operated "fully integrated travel websites … accessible in Florida," "promoted their websites" and the Cuban resorts at issue to Florida residents, and Florida residents "used those websites to book accommodations at the Resorts." *Id*. at

1271-2. The only significance of the multitude of alleged Florida connections analyzed in *Del Valle* to this appeal is the stark contrast between those allegations and the actual facts here – established after extensive jurisdictional discovery – on which the magistrate judge's and district court's rulings were based.

The facts here show no ties to Florida sufficient for personal jurisdiction. NASI has no connection to Florida. Neither BBC Defendant has a Florida office (or other Florida presence), operates an interactive website, or has promoted any business in Florida or to Florida residents concerning the shipments at issue. Neither BBC Defendant owns or operates *any* vessels, including the two which briefly stopped in the Port of Miami on their way to deliver the turbine blades to Cuba. *Del Valle*, therefore, provides no basis to reverse.

Lacking evidence of any relevant activity in Florida by BBC USA or BBC Singapore, NASI relies on a handful emails sent from or received in their respective offices in Houston and Singapore. The magistrate judge and district court concluded these were not substantively related to NASI's claim and were therefore insufficient to establish personal jurisdiction. NASI fails in its burdens to show otherwise.

Finally, NASI nowhere explains how shipping blades through Miami (or any other U.S. port) to Puerto Carupano constitutes "using" that Cuban port such that personal jurisdiction is created in the Southern District of Florida. NASI's theory appears to be that a Helms-Burton violation occurs, for purposes of personal

- 4 -

jurisdiction (at minimum), not only where the confiscated property is located (in Cuba), but in any venue where any event related to that transaction may have occurred – no matter how tangential and irrespective of whether the transaction in question was lawful. Under NASI's theory, for example, if the ships used to transport the blades to Cuba had stopped in any U.S. port merely to refuel, then all persons (entities and individuals) involved in the voyages would be subject to suit in that district, because fuel is "essential" to such voyages – which would make such fueling "part" of the Helms-Burton violation and thereby create personal jurisdiction. That is not and cannot be the law.

## STATEMENT OF THE ISSUES

1.     Has NASI failed to meet its burden to show that the district court incorrectly ruled that BBC USA did not engage in any conduct in Florida in relation to the claim that it allegedly "trafficked" in a Cuban port sufficient to subject BBC USA to the court's personal jurisdiction: (a) under the "tortious act" prong of the Florida long-arm statute, Fla. Stat. § 48.193(1)(a)(2), or (b) consistent with due process?

2.     Has NASI failed to meet its burden to show that the district court incorrectly ruled that BBC Singapore did not engage in any conduct in Florida or elsewhere in the United States in relation to the claim that it allegedly "trafficked" in a Cuban port sufficient subject BBC Singapore to the court's personal jurisdiction: (a) under the "tortious act" prong of the Florida long-arm statute, Fla. Stat. § 48.193(1)(a)(2), or (b) consistent with due process and under Federal Rule of Civil Procedure 4(k)(2)?

3.     Has NASI failed to meet its burdens to show that (a) it preserved its claim that its Florida civil conspiracy claim otherwise supports the exercise of personal jurisdiction over either BBC Defendant and (b) that the conspiracy claim gives rise to personal jurisdiction?

## STATEMENT OF THE CASE

### COURSE OF PROCEEDINGS AND DISPOSITIONS IN THE COURT BELOW

NASI commenced this action in June 2020, alleging appellees all violated Title III of the Cuban Liberty and Democratic Solidarity Act (LIBERTAD) Act (the "Helms-Burton Act" or "Act"), 22 U.S.C. §§ 6081-6085. A.1.[1] Defendants jointly moved to dismiss the initial complaint for lack of Article III standing and failure to state a claim in several respects. Dkt. 54. The district court (the Hon. Darrin P. Gayles) (a) held that NASI sufficiently alleged standing at the pleadings stage; (b) denied dismissal for failure to state a claim on one ground – the effect of NASI's preceding bankruptcy action – because it raised factual issues; (c) did not address defendants' other grounds for dismissal; and (d) *sua sponte* dismissed the complaint as a shotgun pleading. A.145 at 5-12.

Each defendant also separately moved to dismiss for lack of personal jurisdiction. A.48, A.52, A.53. The district court granted NASI's motion to take "limited jurisdictional discovery" with respect to the personal jurisdiction question, SA.80, and, in the dismissal order, stated, "Defendants may refile their respective motions based on lack of personal jurisdiction, supplemented by facts obtained

---

[1] "A.___" refers to a docket item in Appellant's Appendix; "SA.___" refers to a docket item in Appellees' Joint Supplemental Appendix; and "Dkt." refers to an item in neither appendix, accessible via the district court's docket. Page references are to the page numbers in the court file-stamped legend at the top of each page.

during jurisdictional discovery, upon the filing of an amended complaint," A.145 at 12.

The jurisdictional discovery took about eight months and included multiple depositions, lengthy sets of interrogatories and document requests, thousands of documents produced by defendants, and additional documents produced by three non-parties subpoenaed by NASI. *See*, *e.g.*, Dkt. 184.

After the jurisdictional discovery, NASI filed the operative First Amended Complaint ("FAC"; A.189). NASI alleged that defendants "trafficked" in a Cuban port, in violation of the Act, by involvement in aspects of a shipment by sea of wind turbine blades from China to a Cuban port that Cuba expropriated in 1959 and as to which NASI alleges it holds a claim. *Id.*[2] On the same alleged facts, NASI also claimed that defendants civilly conspired, under Florida common law, to traffic in that port. *Id*.

Defendants jointly moved to dismiss for failure to state a claim on common issues, SA.215, each defendant moved to dismiss for failure to state a claim based on individual issues, SA.214, Dkt. 216 & 217, and each defendant moved to dismiss for lack of personal jurisdiction, A.197, A.201 & A.202.

---

[2] Significantly, although NASI claims "Puerto Carupano" was confiscated, the 1969 certification of NASI's claim by the Foreign Claims Settlement Commission ("FCSC") does not mention "Carupano" at all. Only "Port of Cayo Juan Claro" is mentioned. *See* A.189-1 at 14. Consequently, no appellee could reasonably have had any knowledge of NASI's claim prior to the filing of the action.

The district court deferred (and ultimately did not rule on) the motions to dismiss for failure to state a claim and referred the personal jurisdiction motions to the magistrate judge (the Hon. Alicia M. Otazo-Reyes). Dkt. 251. She heard oral argument, Dkt. 256, after which the parties submitted post-hearing briefs, SA.260, SA.262, SA.264. In the report and recommendation ("R&R"; A.277), she recommended that defendants' motions be granted, specifically rejecting NASI's conspiracy theory. *See id*. The R&R expressly informed the parties of the consequences of failing to timely and adequately object to its findings and recommendations, including quoting and citing 11th Circuit Rule 3-1. *Id.* at 19-20.

NASI filed its objections to the R&R, A.282, and defendants filed a joint response, SA.292. NASI did not object to the magistrate judge's not holding an evidentiary hearing and deciding the issues based on the parties' written submissions and exhibits. *See* A.282. Judge Gayles noted that the objections "reassert[ed] the bulk of the arguments [NASI] raised" in response to the motions, identified only three specific challenges to the R&R – that a "broader range of activity … constitutes trafficking under the Act," that "US export law required that the blades make a stop in Miami enroute to Cuba," and that the magistrate judge "misapplied the constitutional minimum contacts analysis." A.299 at 3-4. After a "*de novo* review of the record," he affirmed and adopted the R&R and dismissed the case for lack of personal jurisdiction. *Id*. at 4-5.

NASI then noticed its appeal. A.300.

STATEMENT OF THE FACTS

## Background Facts

This case concerns the shipment by sea from China to Cuba of 102 wind turbine blades.[3] Extensive jurisdictional discovery established the following factual foundation for the R&R and the district judge's adoption and dismissal of the claims against BBC USA and BBC Singapore for lack of personal jurisdiction.[4]

The blades were shipped on two voyages – one on the *Jade* and one on the *Moonstone* – which occurred in late 2018 and early 2019. The *Jade*'s 53-day voyage began in China on November 15, 2018, it spent about five hours at the Port of Miami on December 30, and it unloaded its entire cargo of 51 blades in Cuba on January 6-9, 2019. A.218-55 at 2 ("1st Line ashore" to "Cast Off"); A.189, ¶ 95 & Fig. 1; SA.200-3 (bill of lading). The *Moonstone* carried separate cargoes for two different customers: (1) the remaining 51 blades to Cuba for DSV-Denmark, SA.200-4 (blades bill of lading); and (2) an unrelated cargo to Port Arthur, Texas, for McDermott International d/b/a CB&I ("McDermott"), SA.199-5 (chartering agreement with McDermott) & SA.199-6 (bill of lading for McDermott cargo).

---

[3] NASI frequently erroneously states that the cargo consisted of "turbines" (*e.g.*, Op.Br. 2-4, 11-12, 14, 16-17, 19-22, 31, 34, 37, 40, 50, 54-55, 57); less frequently it correctly describes the cargo as "blades" (*e.g.*, *id*. at 10, 12-13, 17, 20). The only cargo involved was the 102 blades.

[4] The facts of the involvement in the sale and shipment of the blades by the other appellees – Goldwind and DSV-US – are addressed in their briefs and are not addressed in detail here, except to the extent relevant.

The *Moonstone*'s 48-day voyage began in China on December 25, 2018, it similarly spent about five hours at Port Miami on January 30, 2019, it unloaded the blades in Cuba on February 4-7, and it unloaded the cargo for McDermott at Port Arthur on February 10. A.218-56 at 2 ("1st Line ashore" to "Cast Off"); A.189, ¶ 118 & Fig. 2.

The blades were part of the equipment and services that the Goldwind appellees (jointly, "Goldwind") contracted to supply to a non-party Cuban entity, Energoimport, for use in a wind farm project in Cuba. A.218-2. Goldwind purchased the blades from non-party LM Wind Power A/S ("LM"), a Denmark-based affiliate of the United States-based non-party GE. A.218-8.

Goldwind contracted with DSV Air & Sea A/S, a non-party freight forwarder based in Denmark ("DSV-Denmark"), to arrange for the shipments from China to Cuba. Op.Br. 12. DSV-Denmark in turn contracted with non-party BBC Chartering Carriers GmbH & Co. KG ("BBC Carriers"), a shipping fleet operator based in Germany, to transport the blades on one or more of its ships. SA.200-2.

BBC USA is a 45-person company based in the Houston area and BBC Singapore is a 40-person company based in Singapore; they each perform certain services as a regional agent for BBC Carriers under individual agency agreements. SA.218-22 and SA.218-38. Neither owns or operates ships. SA.199, ¶ 8; SA.200, ¶ 8. Each performs services in its respective territory: BBC Singapore in the "Far

- 11 -

East," *id*., ¶ 11, and BBC USA in North and Central America "including ports in the Caribbean *except for Cuba*," SA.199, ¶ 11 (emphasis added).

BBC Singapore performed its services as agent for BBC Carriers in connection with the blades' shipment because the shipment originated in China, which is within its territory. BBC Singapore (as BBC Carriers' agent) signed the chartering agreement between DSV-Denmark and BBC Carriers, whereby the latter agreed to supply one or more ships to transport the blades. SA.200-2.[5] BBC Singapore performed its services only from its office in Singapore and engaged in no substantive activities in Florida or the United States.

The decision that the *Jade* and *Moonstone* would stop briefly in the Port of Miami in order to comply with U.S. trade laws – without loading or unloading any cargo – on its way from China to Cuba was made by GE, *not* by BBC Singapore (or BBC USA), and *before* any BBC entity even learned of these potential shipments. GE's affiliate, LM, informed Goldwind in *January 2018* that the ships were to stop in Miami to comply with an export license, the application for which

---

[5] NASI implies that BBC Singapore itself was a party to the chartering agreement – *e.g.,* Op.Br. 17 ("BBC Singapore executed a formal chartering agreement with DSV's Danish counterpart") – even though the agreement identifies *BBC Carriers* as the contracting party, SA.200-2 (first page of agreement), and BBC Singapore's signature seal on the agreement states, "as agents for and on behalf of the carrier – [BBC Carriers]." *Id.* (last page). NASI elsewhere concedes that "DSV's Danish affiliate engaged *BBC Carriers*" to provide and operate the ships. Op.Br. at 12 (emphasis added).

was "in the [sic] process at the U.S. Department of Commerce." A.218-11 (last page, Note 1). BBC Singapore learned of a possible shipment on a BBC Carriers-operated ship nearly two months later, when DSV-Denmark first emailed BBC Singapore about it on *March 15, 2018*. SA.200-1 at 49-51. In that initial inquiry, DSV-Denmark informed BBC Singapore that:

> . . . the vessel have to go to *a US port* to get some documents validated, the cargo is not to be discharged, the vessel have to berth and wait for the documents to be taken care of, we expect this to be completed in a 24 hour window and after this, then the vessel will go to Cuba.

*Id.* (emphasis added). Thus, "*a US port*" was required, not *the* Miami port.

GE applied for and obtained a U.S. Department of Commerce export license authorizing delivery of the blades to Cuba. A.218-17. GE, by its senior counsel and sanctions specialist, certified to DSV-Denmark that GE "can rely on its Department of Commerce license and the corresponding OFAC general license in [31 C.F.R.] Section 515.533(a) for the proposed shipment from China to Cuba." A.218-31 at 8.

DSV-Denmark provided a copy of the export license to BBC Singapore before BBC Singapore executed the charter agreement as agent for BBC Carriers. In the charter agreement, DSV-Denmark "warrant[ed] and guarantee[d] that all licenses/permits are in order and approved by the US Department of Commerce and, if required, by the Office of Foreign Assets Control, and that the cargo is non-sanctioned." SA.200-2 at 8, clause 24.

- 13 -

BBC Carriers thereafter designated two of its vessels to transport the blades: the *Jade* and the *Moonstone*. To assist the vessels during their anticipated brief stops in Miami, BBC Carriers – *not* BBC Singapore – hired a port agent in Miami ("USA Maritime"), which in turn hired a sub-agent ("Seaport Hub"). SA.200-6 & SA.200-7. NASI repeatedly asserts that BBC Singapore hired the port agents, Op.Br. 3, 18, 37, 40, but the evidence shows NASI's assertions are incorrect.

BBC USA acted as BBC Carriers' agent only as to the Port Arthur-bound cargo, which was to be delivered within its territory and had nothing to do with the shipment of blades to Cuba. SA.199 (Petersen Decl.), ¶¶ 33-39, 47-48.

Each ship spent about five hours in Miami during its respective 56-day (*Jade*) and 45-day (*Moonstone*) voyage from China to Cuba. Neither ship loaded or unloaded cargo in Miami. The sole purpose of the Miami stops was to obtain clearances from U.S. Customs for the blades to be delivered to Puerto Carupano, Cuba. The issued clearances, with a copy of the export license attached, expressly note that the ships were departing from Miami for "Puerto Carupano, Cuba." SA.200-10, box 12 (*Jade*); SA. 200-11, box 12 (*Moonstone*).[6]

---

[6] NASI contends that BBC Singapore deceived U.S. Customs because the clearance for the *Moonstone* includes "Rio Haina" as a post-Cuba stop, although the *Moonstone* did not plan to and did not stop there. Op.Br. 21-22. There is no evidence, however, that either BBC Defendant prepared or submitted information to U.S. Customs concerning the *Moonstone*'s itinerary, and each attested that it did not. SA.199 (Petersen Decl.), ¶¶ 47-52; SA.200 (Schoennemann Decl.), ¶¶ 33, 51-52, 66. In any event, the Customs clearance states on its face that the

Notably, neither BBC Singapore nor BBC USA (nor any other appellee) could have known that Puerto Carupano could be the subject of a trafficking claim. The 1969 FCSC decision certifying NASI's claim, A.189-1, nowhere mentions "Carupano." The only port mentioned, buried in a listing of numerous other properties, is "Port of Cayo Juan Claro." *See id*. at 14.

Neither BBC Defendant engaged in any purposeful or substantive activity in Florida or elsewhere in the United States in relation to the shipments – as both the magistrate judge and district judge district court concluded. The exhaustive jurisdictional discovery revealed: (a) no communications at all between BBC USA and anyone in Florida concerning these shipments, and (b) only a handful of inconsequential emails between BBC Singapore and anyone in the United States.

NASI does not dispute that: (a) BBC Singapore is a small company with no office, employees, or presence in the U.S.; (b) BBC USA is a small company based in Texas with no office, employees, or presence in Florida; (c) none of their respective employees set foot in Florida in connection with the ships' stops in Miami; (d) neither owns or operates these (or any other) ships, which are owned and operated by *non-party* entities based in Germany; (e) there was no communication between BBC USA and anyone in Florida concerning the

_____

*Moonstone*'s next port after Miami was Puerto Carupano, Cuba. SA.200-11, boxes 12 & 15.

- 15 -

shipments; and (f) BBC Singapore exchanged only a few emails with a Miami port agent concerning the *Jade* shipment. *See* SA.257 (June 21, 2022 transcript) at 26:7 to 27:21 (BBC USA) and 34:6-25 (BBC Singapore).

NASI did not rebut the sworn assertions by the BBC Defendants' respective chief officers that neither of them derived any commercial benefit from the shipments. SA.199, ¶¶ 10, 55-57 (Petersen Decl.); SA.200, ¶¶ 10, 73-75 (Schoennemann Decl.). Under their respective agency agreements, the BBC Defendants' annual revenue, paid by their principal, BBC Carriers, consists of their overhead and expenses; the BBC Defendants' revenue thus would have been the same if the shipments had not occurred. *Id*.

Finally, there are no communications between either BBC Defendant and any of the three other appellees – the two Goldwind entities and DSV-US. None of the documents or deposition excerpts in the 86 exhibits (102, including the English translations) NASI submitted reflected any such communications. Dkt. 218-1 through 218-102. BBC Singapore communicated about the Miami stops only with non-party DSV-*Denmark*, non-party USA Maritime, and with its non-party European affiliates, BBC Esbjerg (Denmark) and BBC Carriers (Germany) – but *not* with its supposed co-conspirator defendants, Goldwind or DSV-US.

BBC USA did not communicate with anyone about the Miami stops.

**Specific Facts Relating to BBC USA**

NASI presented no evidence in the district court to support its statement that BBC USA "directly participated in the months-long planning, scrutinization, and ultimate consummation" of the "BIS Loophole Scheme." Op.Br. 18-19. The single document on which NASI bases this contention fails to support it. This long email trail (A.218-39) begins with an email from DSV-Denmark dated March 15, 2018 – *i.e.*, months before the *Jade*'s voyage in November 2018 – concerning a possible shipment of blades from China to Cuba (the "Initial Email"). *Id*. at Bates No. 002656.[7] DSV-Denmark addressed the Initial Email to BBC Singapore (given that the shipment was to originate in the Far East) and copied the chartering groups at BBC USA and BBC-Esbjerg. The substantive communications in the twenty emails in the thread that copied BBC USA, spanning March to September 2018, are all between DSV-Denmark and BBC-Esbjerg; none is directed to BBC USA (or BBC Singapore). *See* SA.199-1 at 2-22. BBC USA happened to continue to be included in the "Cc" field. *See id*. Solely as a result of DSV-Denmark's original addressing choice, these serial emails were delivered to BBC USA's eleven-person chartering group. No member of that group replied or otherwise acknowledged the conversation, which is unsurprising because BBC USA's chartering department "receives about 1,000 emails *a day*" and ignores emails with "Cuba" in the subject

---

[7] A.218-39, cited by NASI, is blurry. A more legible copy is located at SA.199-1.

- 17 -

line. SA.199, ¶ 22 (emphasis added); A.238-1 at 3-9 (testimony by Mr. Petersen).

NASI did not (and cannot) point to any response by BBC USA.

The record also does not support NASI's contention that "BBC USA tasked its customs documentation specialist, Beverly Scott, to review and approve a BIS/OFAC analysis underlying the BIS Loophole Scheme, along with the scheme's foundational documents." Op.Br. 19 (citing A.218-42). The nine-page email trail on which NASI relies proves otherwise. The first six emails are among employees of BBC Singapore, DSV-Denmark, and BBC-Esbjerg – but not BBC USA. In the sixth, dated November 6, 2018, DSV-Denmark informed BBC Singapore "that ISF and AMS filing [with U.S. Customs] *has been filed* from our side [DSV-Denmark] in Descartes."[8] *Id.* at 3 (emphasis added). DSV-Denmark included in this email "screen dumps" of these filings – which DSV-Denmark (and/or DSV-US) had made *two weeks earlier*.[9] *See also* SA.218-49 at 5 (October 25, 2018 email stating DSV-US had filed the forms on behalf of DSV-Denmark).

On November 6, BBC Singapore forwarded the emails in this trail to BBC USA's chartering and inbound groups, stating: "I got below from DSV [Denmark] for the shipment into Cuba. Can you have a look and revert if there are any

---

[8] Descartes is a system for filing U.S. Customs documents electronically. See https://www.descartes.com/solutions/customs-and-regulatory-compliance/customs-declarations/united-states (last accessed June 30, 2023).

[9] The screen dumps are shown in another email trail containing the same email from DSV-Denmark. *See* SA.199-3 at 3.

- 18 -

comments." A.218-42 at 2. The next day, November 7, Ms. Scott of BBC USA's inbound department provided a one-line reply: "Everything looks good and correct to me" – *i.e.*, commenting about documents DSV Denmark and/or DSV-US had filed with U.S. Customs two weeks before. *Id*. Ms. Scott's polite reply two weeks after those filings in no way shows that BBC USA "tasked [Ms. Scott] to review and approve a BIS/OFAC analysis," as NASI claims. Op.Br. at 19.

Finally, the record also does not support NASI's assertion that BBC USA "directly participated in the logistics of loading and unloading the turbines [sic] from the vessels." *Id.* (citing A.218-40). The two emails in that document show that BBC Singapore informed BBC USA that a ship's piece of equipment known as a "spreader," used to unload blades in Cuba, would be on the *Moonstone* and was to be offloaded when the *Moonstone* docked in Port Arthur, Texas. *See id.* BBC Singapore asked whether the spreader should be in one or three pieces. *Id.* at 3. BBC USA answered the question in a separate email: "Leave the spreader together." SA.218-41.[10]

**Specific Facts Relating to BBC Singapore**

NASI repeatedly asserts that BBC Singapore hired and directed the Miami port agents. Op.Br. 3, 18, 37, 40. The record shows the contrary. BBC Carriers

---

[10] NASI cites two other documents concerning BBC USA, both of which concern the unrelated shipment to McDermott, not the blades' shipment to Cuba. *See* Op.Br. 22 (citing A.218-67, A.218-68 & A.218-69). They are thus irrelevant to the jurisdictional inquiry.

hired the lead Miami port agent, USA Maritime: "BBC Chartering Carriers GmbH & Co. KG [BBC Carriers] is pleased to appoint you as port agent for BBC Jade ... calling at Miami FL ETA Dec 18." SA.200-6; *see also* SA.200-7 (USA Maritime appointed the other Miami port agent, Seaport Hub, as its sub-agent).

BBC Singapore's managing director testified that the Miami port agent "acted on BBC Chartering Carriers, Germany's behalf, and not [BBC] Singapore's behalf …. I would not know [what activities the Miami port agents conducted] because we are not involved in that part of the voyage." SA.239-1 at 21:10-18. *See also id.* at 6:8-11 (BBC Singapore has "zero" operations in the U.S.) & 7:4 to 8:7 (BBC Singapore has no "involvement in the U.S. ports" or anywhere outside the Far East); SA.200 (Schoennemann Decl.), ¶¶ 43-47 (same).

NASI relies heavily on an email from BBC Singapore to USA Maritime, A.218-54, as supposedly showing that BBC Singapore was actively involved in the ships' Miami stops. Op.Br. 18. That email establishes the opposite.

After the *Jade* departed from Miami and before the *Moonstone* was scheduled to arrive there, BBC Singapore emailed USA Maritime, "we're trying to put together a sort of lessons learned" from the *Jade's* stop in Miami and asked for "a brief rundown" of what occurred at that port "leading up to the vessel being cleared." A.218-54 at 4. USA Maritime provided that summary by reply email, which BBC Singapore forwarded to BBC Carriers with the message: "below FYI for upcoming call [of the *Moonstone*] in Miami." *Id*. at 1-3.

Thus, BBC Singapore did not even know what transpired with U.S. Customs during the *Jade*'s Miami stop, much less directed the port agents' actions in Miami. BBC Singapore solely performed its task of monitoring ships' activities when they were outside its territory, and conveyed information about what had already occurred to BBC Carriers. SA.200 (Schoennemann Decl.), ¶¶ 47-50.

NASI focuses much of its factual discussion on BBC Singapore's hiding from McDermott that the *Moonstone* was to stop in Cuba before proceeding to Port Arthur, Texas, to deliver McDermott's cargo. *See* Op.Br. 21-22. BBC Singapore readily admitted that BBC Singapore inquired about and took certain steps in an effort to shield the Cuba stop from McDermott by (a) creating a fictitious stowing plan for *McDermott*, which showed the blades being delivered to Rio Haina rather than Cuba; (b) asking the *Moonstone's* captain whether he could legally and safely turn off one or more of the ship's tracking systems while it was near or in Cuba; and (c) asking its personnel and that of BBC Carriers not to disclose the Cuba stop *to McDermott*. SA.200, ¶ 82; *see also id.*, ¶¶ 76-81 and 83-84.

However, there is zero evidence that BBC Singapore falsely represented the *Moonstone*'s itinerary *to U.S. authorities*. The U.S. Customs clearances for the *Jade* and for the *Moonstone* clearly state that the next destination after Miami is Puerto Carupano, Cuba. SA.200-10, box 12 (*Jade*); SA.200-11, box 12 (*Moonstone*). U.S. Customs therefore knew that the *Moonstone* was bound for Cuba immediately after Miami – and was in no way misled or deceived.

- 21 -

## STANDARD OF REVIEW

The Court reviews *de novo* a district court's dismissal for lack of personal jurisdiction. *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021). However, "[i]f the district court makes any findings of fact in reaching its personal jurisdiction conclusion, we review those fact findings for clear error." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

Where an appeal involves a report and recommendation, any "failure to object means that we review the facts laid out by the magistrate judge only for plain error or manifest injustice." *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1308 (11th Cir. 2013). A failure to object adequately to the recommendations constitutes waiver. *See* 11th Cir. R. 3-1 ("A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation … waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions[.]"); *see also Dupree v. Warden*, 715 F.3d 1295, 1305-06 (11th Cir. 2013) (noting the Court's authority to adopt a rule finding waiver for failure to object to legal conclusions).

Finally, "[i]t is well settled that issues not raised in the district court in the first instance are forfeited." *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1152 (11th Cir. 2011). "The corollary of this rule is that, if a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an

opportunity to recognize and rule on it." *In re Pan Am. World Airways, Inc.*, 905 F.2d 1457, 1461-62 (11th Cir. 1990) (footnotes omitted).

## SUMMARY OF THE ARGUMENT

The district court properly dismissed this case for lack of personal jurisdiction as to the BBC Appellees because BBC USA had *no* involvement in Florida and BBC Singapore had no substantive involvement in the United States in relation to NASI's claim that defendants trafficked (or conspired to traffic) in a Cuban port in violation of the Helms-Burton Act. Neither BBC Appellee committed a tortious act in or directed to Florida, as required by the tortious act prong of the Florida long-arm statute, Fla. Stat. § 48.193(1)(a)(2). Nor can the due process requirements be met as to either BBC Appellee because neither purposefully availed itself of the privilege of doing business in Florida (or, as to BBC Singapore, in the United States) related to NASI's trafficking claim.

The only Florida (or United States) connection is that two ships (not owned or operated by either BBC Singapore or BBC USA) delivering wind turbine blades from China to a Cuban port stopped for about five hours in the Port of Miami. The ships did not load or unload any cargo in the United States; they only stopped to present to U.S. Customs a U.S. Department of Commerce license authorizing shipment of the specific cargoes of wind turbine blades to Cuba. Non-party GE – which manufactured the blades and whose affiliate, LM, sold them to Goldwind – applied for and obtained the export license and decided that the ships would stop in Miami. *Neither BBC Defendant participated in that decision*. The ships' brief stops *in Miami* were not sufficiently related to NASI's claim that the BBC Appellees

- 24 -

trafficked *in a Cuban port* to satisfy the requirements of Florida's long-arm statute or the Due Process Clause, as the district court correctly concluded. R&R at 14.

Furthermore, even if the Court deemed the two brief stops in Miami related to NASI's trafficking claim overall, NASI can point to no clear error in the magistrate judge's or the district court's analyses of the factual record, which establish that neither BBC USA nor BBC Singapore played any substantive role.

The facts of this case – as determined by the district court after reviewing the FAC and the parties' evidentiary submissions and "construing all reasonable inferences in favor of [NASI]" (R&R at 13) – foreclose a finding of personal jurisdiction as to either BBC Defendant. Neither committed a "tortious act" from which the trafficking claim arises, under Florida's long-arm statute; neither purposefully availed itself of the privilege of doing business in Florida (or, as to BBC Singapore, in the United States) so as to satisfy due process requirements; and neither conspired to commit a tortious act in or directed to Florida (or the United States) in relation to the Cuba shipments, to warrant exercising "conspiracy jurisdiction" over it. And, in any event, independent of its multiple substantive flaws, the "BIS Loophole Conspiracy" argument was neither properly presented to the district court nor preserved for this appeal.

Accordingly, the district court's decision should be affirmed.

**ARGUMENT**

As this Court reiterated in *Del Valle*, the two-step analysis to determine whether there is personal jurisdiction over a nonresident defendant is well-established. *See* 56 F.4th at 1272. First, the Court addresses whether NASI has alleged sufficient facts to subject either BBC USA or BBC Singapore to personal jurisdiction under Florida's long-arm statute. *Id.* Second, if so, the Court then decides whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Id.*

Here, as the magistrate judge and the district court correctly found, NASI failed at *both* steps. The magistrate judge succinctly summarized her factual findings as follows:

> The record does not support a finding that a substantial aspect of [the] Helms-Burton Act violation occurred in Florida. Rather, the record reflects that neither the Goldwind Defendants nor BBC USA engaged in any Florida-based activities with respect to the alleged trafficking violation, much less any that were essential to the success of the tort. As for BBC Singapore, its few communications with Port of Miami agents about the Jade's stop in Miami do not amount to a substantial aspect of the alleged trafficking violation; nor can it be said that these communications were essential to the success of the alleged trafficking in Cuba.

A.277 at 14 (internal quotations and citations omitted). For the sake of completeness, the magistrate judge also addressed whether BBC USA or BBC Singapore had sufficient "minimum contacts" with Florida to meet the due process requirements. *Id.* at 15. She concluded they do not: "[T]he BBC Defendants have

not purposefully availed themselves of the privilege of conducting any activities in Florida." *Id.* at 15-16.

In its review of the R&R, the district court noted, "Those portions of the report and recommendation to which objection is made are accorded *de novo* review, if those objections 'pinpoint the specific findings that the party disagrees with.' *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009)." A.299 at 4. Applying this standard, the district court properly adopted the report and recommendation in full in its dismissal order. *See id.*

Nothing NASI has presented to this Court shows clear error as to the factual findings or legal error – to the extent the arguments were preserved – with respect to the district court's application of the law to the determined facts. Therefore, the dismissal of BBC USA and BBC Singapore for lack of personal jurisdiction should be affirmed.

## I.  BBC USA WAS PROPERLY DISMISSED FOR LACK OF PERSONAL JURISDICTION

### A.  NASI Failed – and Fails – to Show That BBC USA's Actions Fell Within the Ambit of Florida's Long-Arm Statute

As this Court has stated, "Florida's long-arm statute is to be strictly construed." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons[,]" *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014), and Florida law is clear that "any doubts about [the] applicability of the

statute [must be] resolved in favor of the defendant and against a conclusion that personal jurisdiction exists," *Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143, 1150 (Fla. 3d DCA 2007).

As to BBC USA, NASI relies only on the "tortious act" prong of Florida's long-arm statute, which requires NASI to show that BBC USA committed "a tortious act within" Florida. Fla. Stat. § 48.193(1)(a)(2). *See* Op.Br. at § II-B. Asserting personal jurisdiction over BBC USA under the tortious act provision would be improper, however, because NASI fails in its burden as to two of its requirements: (1) that the claim *arise from* the alleged tortious act, and (2) that the alleged tortious act be committed "within this state." It must satisfy both; it satisfies neither.

As NASI concedes (Op.Br. at 39), it is well settled that a claim *must arise from* the defendant's alleged acts for personal jurisdiction to be proper under Section 48.193(1)(a)(3). *E.g.*, *Louis Vuitton*, 736 F.3d at 1353 ("Section 48.193(1)(a)(2) provides that a nonresident defendant is subject to personal jurisdiction in Florida "*for any cause of action arising from … [c]omitting a tortious act within [Florida].*") (emphasis, ellipses, and brackets in original); *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) (although a tortious act can occur through communications into Florida, "the cause of action must arise from the communications").

NASI argues that the "tortious act" in this case was a claimed federal regulation violation – which NASI vaguely describes in this Court (but did not in the district court) as "execution of the BIS Loophole Scheme and Miami stopovers" – and that its trafficking claim arose from that violation. Op.Br. at 39. That argument is wrong in at least three critical respects.

*First*, NASI never alleged that any Defendant violated a federal statute other than the Helms-Burton Act itself. The FAC merely contains three footnotes discussing federal regulations of shipments to Cuba; it nowhere alleges that Defendants actually violated those regulations. *See* A.189, ¶¶ 58 n.14, 60 n.15, and 86 n.17. In this Court, NASI merely states that Defendants "attempt[ed] to exploit a regulatory *gray area*." *Id*. at 2 (emphasis added); *see also id*. at 3, 5, & 16 (repeating the "gray area" description). Even if the argument had any merit (and it does not), NASI's failure to make the argument properly waives the argument. *See*, *e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 930-31 (2011) (refusing to address passing argument for personal jurisdiction).

*Second*, NASI expressly pled that authorization under federal regulations "to ship goods to Cuba *is separate from* – and does not shield the participants of said shipment from – *Helms-Burton Act liability*." FAC, ¶ 58 n.14 (emphasis added); *see also id*. ¶ 191 ("liability and penalties under U.S. trade laws … are separate from the Helms-Burton Act"). Thus, NASI may not turn around in this Court and argue that alleged violations of those "separate" statutes create personal

- 29 -

jurisdiction with respect to its Helms-Burton claim. *See*, *e.g.*, *Douglas Asphalt*, 657 F.3d at 1152 (11th Cir. 2011) ("It is well settled that issues not raised in the district court in the first instance are forfeited."); *In re Pan Am.*, 905 F.2d 1457, 1461-62 ("[T]o preserve a claim, argument, [or] theory … for appeal," appellant must first clearly present it to the district court … in such a way as to afford the district court an opportunity to recognize and rule on it.") (footnotes omitted).

*Third*, the record is clear that neither BBC USA nor BBC Singapore (nor any other Defendant) violated any federal Cuba embargo statute or regulation. U.S. Customs in Miami cleared the blades for shipment *to Puerto Carupano*. It would not have done so if it had viewed either shipment as violating federal law or regulations governing shipments expressly destined for Cuba.

In any event, NASI's claim for "trafficking" under the Act does not arise from the ships' 5-hour stops in Miami for the sole purpose of obtaining U.S. Customs clearance. Each of the Act's three clauses that define "traffics" requires proof that a defendant, directly or through others, used or profited from the use of "confiscated property." 22 U.S.C. § 6023(13). NASI's claimed property – Puerto Carupano – is in Cuba. The Miami stops cannot colorably be argued to be essential to NASI's trafficking claim because the claim would have been *identical* if the shipments had gone directly from China to Cuba *without* stopping in Miami.

The fact that the trafficking claim does not arise from the Miami stops is, by itself, sufficient to affirm the district court's dismissal. However, NASI also cannot

show it met the second requirement under section 48.193(1)(a)(2): that the tortious act be committed "within this forum." BBC USA performed *no* acts in *or directed to* Florida in relation to the shipments to Cuba; hence, it did not commit a tortious act (or *any* act) "within this state."

NASI strains to show some tangential involvement by BBC USA in the shipments by arguing: (i) that BBC USA was copied on – but not that it ever responded to – multiple emails after the Initial Email; (ii) that Ms. Scott courteously and briefly replied to an email stating that the already-filed (by DSV-Denmark) U.S. Customs forms "look[ed] good and correct" to her; and (iii) that BBC USA was asked whether it preferred to unload the ships' spreader in Port Arthur, Texas, in one or three pieces. Op.Br. 18-20.

None of those communications, however, was directed to or from Florida. NASI has not identified a single communication concerning the blades' shipment between anyone at BBC USA and anyone in Florida. In the nearly six pages that NASI devotes to its argument on "tortious act" jurisdiction, it lumps all "Defendants" together and does not mention BBC USA (or BBC Singapore) once. *See* Op.Br. at 39-44. The only specific references are to Goldwind and DSV-US. *See id.* at 44. As a result, NASI fails to tie its claims or Florida to any acts by BBC USA, which is fatal to its argument.

To establish that BBC USA committed alleged tortious acts "within th[e] forum," NASI would have had to show either: (1) that such acts caused injury in

Florida, *Louis Vuitton*, 736 F.3d at 1353 ("under Florida law, a nonresident defendant commits 'a tortious act within [Florida]' when he commits an act *outside* the state that causes *injury within Florida*") (italics, brackets, and internal quotations in original), or (2) that BBC USA committed a substantial aspect of the alleged tort in Florida and those acts were "essential to the success of the tort," *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir. 1988). The district court considered both these alternatives and found that NASI failed to show either. R&R at 13-14. The first fails because no injury occurred in Florida: NASI has no connection to Florida. A.189, ¶ 17. This alone makes *Del Valle* inapposite, because the alleged injuries there were to the Florida plaintiffs and other Florida residents. *See* 54 F.4th at 1272 & 1277. The second also fails because "the record reflects that neither the Goldwind Defendants nor BBC USA engaged in any Florida-based activities with respect to the alleged trafficking violation, much less any that were 'essential to the success of the tort.'" R&R at 14.

In sum, the district court correctly found that NASI's factual allegations about BBC USA did not come close to meeting the requirements of the tortious act prong of Florida's long-arm statute, and NASI has failed in its burden in this Court to show otherwise.

**B.      NASI Failed – and Fails – to Show That Exercising Personal Jurisdiction over BBC USA Would Satisfy Due Process**

The due process inquiry "imposes a more restrictive requirement" than Florida's long-arm statute. *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 859-60 (11th Cir. 2013). However, because personal jurisdiction over BBC USA does not lie under the long-arm statute, the Court need not perform a due process analysis. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 n.15 (11th Cir. 2009).

In any event, NASI fails in its burden here also. To satisfy due process, a court must find that: (1) the nonresident defendant "purposefully established minimum contacts with the forum"; and (2) "the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *Herederos de Roberto Gomez Cabrera, LLC v. Teck Resources Ltd.*, 43 F.4th 1303, 1310 (11th Cir. 2022). In addition, to establish minimum contacts in a specific jurisdiction case, "(1) the plaintiff's claim must 'arise out of or relate to' one of the defendant's contacts in the forum, (2) the defendant must have 'purposefully availed' itself of the privilege of conducting activities within the forum, *and* (3) jurisdiction must comport with 'traditional notions of fair play and substantial justice.'" *Id*. (citing *Louis Vuitton*, 736 F.3d at 1355). *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (purposeful availment includes "invoking the benefits and protections of its [the forum State's] laws"). NASI "bears the burden of establishing the first two prongs." *Louis Vuitton*, 736 F.3d at 1355.

- 33 -

Yet again, NASI has not met its burdens.

*First*, NASI's claims do not "'arise out of or relate to' one of [BBC USA's] contacts with the forum state" for the simple reason that BBC USA had *no* contacts, not even a single email, with anyone in Florida relating to the Cuba shipments. The analysis properly ends there.

*Second*, NASI cannot show that BBC USA "purposefully availed itself of the privilege of conducting activities within [Florida], thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475.[11] BBC USA had no role in the decision by non-party GE that the ships had to stop in a U.S. port to comply with U.S. trade laws – or GE's choice of Miami – before proceeding to Cuba; BBC USA did nothing to implement that decision; and BBC USA did not invoke or obtain any benefit or protection from Florida laws in relation to the shipments to Cuba. In fact, not even the *non-parties* that decided on or implemented the Miami stops – GE, DSV-Denmark, BBC Carriers and the ship's owners – invoked or sought the protection of any *Florida* law. They relied on a *federal* export license and *federal* embargo regulations, and neither the ships nor their cargoes entered Florida so as to invoke or benefit from its laws.

---

[11] "[P]urposeful availment" is addressed here under the traditional "minimum contacts" analysis because NASI does not (and could not) contend that it meets the alternative "effects test" under *Calder v. Jones*, 465 U.S. 783, 790 (1984), which requires injury in the forum state; no injury occurred in Florida. *See* R&R at 16 ("Plaintiff fails to satisfy the 'effects test' articulated in *Calder*").

The third due process requirement is "fair warning." "[T]his 'fair warning' requirement is satisfied only if the defendant has 'purposefully directed' his activities at residents of the forum." *Burger King*, 471 U.S. at 472. NASI is not a resident of Florida; therefore, NASI fails (and failed) on this requirement also.

In sum, asserting personal jurisdiction over BBC USA not only would be improper under Florida's long-arm statute, it would also violate due process.

## II. BBC SINGAPORE WAS ALSO PROPERLY DISMISSED FOR LACK OF PERSONAL JURISDICTION

### A. Similarly, NASI Failed – and Fails – to Show That BBC Singapore' Actions Fell Within the Ambit of Florida's Long-Arm Statute

Although BBC Singapore, unlike BBC USA, did play a limited role in the blades' shipment to Cuba, it engaged in no substantive contact with Florida. The assertion of personal jurisdiction over BBC Singapore under the tortious act prong of Florida's long-arm statute therefore is improper for essentially the same reasons as for BBC USA.

As detailed above, BBC Singapore:

- Became involved only because the shipment originated in China, within its geographic area, the Far East.

- Acted only from its office in Singapore, without any physical presence in Florida.

- Acted, not for its own account, but rather as agent for the ships' operator, Germany-based BBC Carriers.

- Did not decide that the ships were to stop in Miami; that decision was made by non-party GE, which communicated it (through its affiliate LM) to Goldwind, which communicated it to DSV-Denmark, which informed BBC Singapore.

- Did not hire or direct the activities of the Miami port agents; non-party BBC Carriers hired and directed USA Maritime, which hired and directed its sub-agent, Seaport Hub. BBC Singapore exchanged emails with USA Maritime only to ask what occurred during the *Jade*'s stop in Miami and convey that information to BBC Carriers.

- Did not prepare or submit any documents to U.S. authorities; that was done by DSV-Denmark (directly and/or through DSV-US).

- Merely monitored the shipments, once the ships left the Far East, to convey information, as appropriate, to BBC Carriers.

- Earned no revenue and gained no commercial advantage from the blades' shipment to Cuba.

On these record facts, which NASI failed to contravene: (a) BBC Singapore committed no tortious act within or directed to Florida; and (b) NASI's trafficking and conspiracy claims did not arise from any acts of BBC Singapore – just as with

respect to BBC USA. As explained above with respect to BBC USA, both elements must be present to exercise personal jurisdiction over BBC Singapore under section 48.193(1)(a)(2). Accordingly, the district court correctly held that it lacked personal jurisdiction over BBC Singapore under that provision, R&R at 12-14, and NASI has failed in its burden in this Court to show otherwise.

### B. NASI Likewise Failed – and Fails – to Show That Exercising Personal Jurisdiction over BBC Singapore Would Satisfy Due Process or Would Be Proper under Rule 4(k)(2)

Because BBC Singapore is not subject to personal jurisdiction in any State, it could only fall within the ambit of Federal Rule of Civil Procedure 4(k)(2), which authorizes the exercise of personal jurisdiction if "exercising jurisdiction is consistent with the United States Constitution and law." *Id.* The due process analysis under Rule 4(k)(2) is the same as the one under the "two-step" analysis, except that the applicable forum is the United States as a whole. *See Oldfield v. Pueblo De Bahia Lora, S. A.*, 558 F.3d 1210, 1220 (11th Cir. 2009).

NASI fails (and failed) to meet its burden of showing that the due process requirements are met as to BBC Singapore for essentially the same reasons as it fails (and failed) as to BBC USA.

*First*, NASI's claims do not "arise out of or relate" to BBC Singapore's trivial email contacts with the forum. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017, 1024-25 (2021) (emphasis added). As the Supreme Court underscored in *Ford*, "[i]n the sphere of specific jurisdiction, the phrase 'relate to'

incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id*. at 1026. BBC Singapore's request to the Miami port agent for a summary of what occurred when the *Jade* briefly docked there, so it could convey that information to BBC Carriers, did not "relate to" the alleged trafficking in Cuba, especially in view of the "real limits" established by *Ford* on that phrase. The blades would have been delivered to Cuba with or without any involvement of BBC Singapore in those emails.

Recently, this Court applied the common-sense interpretation of the phrase "arise out of or relate to" in *Herederos*, which was also a Helms-Burton Act case. As the Court held, "[t]o determine whether a defendant's conduct arose out of its contacts with the forum, 'we look to the affiliation between the forum and the underlying controversy, *focusing on any activity or occurrence that took place in the forum*.'" 43 F.4th at 1310 (quoting *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018) (emphasis in original), and citing *Ford*, 141 S.Ct. at 1025). Here, NASI failed to show any activity by BBC Singapore associated with NASI's claims within the forum – *i.e.*, Florida or the United States as a whole.

Further, due process requires that a defendant's claims-related contacts with the forum must be *purposeful*. They "must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford*, 141 S.Ct. at 1025 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). The defendant must have "deliberately 'reached out beyond' its home – by, for example, 'exploi[ting] a

market' in the forum State or entering a contractual relationship centered there." *Id*. (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

BBC Singapore did none of these things. It did not own or operate the ships that stopped in Miami; it did not decide that the ships would stop there (or anywhere in the U.S.); it did not apply for an export license; it did not prepare or submit any filings or the export license to U.S. authorities; it did not enter into any contracts in Florida; and it did not "exploit" the Florida market. Rather, BBC Singapore performed its limited agent's services in connection with these shipments from its office in Singapore, within its territory in the Far East, and then merely monitored events during the remainder of the voyages outside its territory. Accordingly, it did not "reach out beyond its home" in Singapore. And, like BBC USA, it directed no activities to any Florida residents – again, because NASI is not a Florida resident.

Because NASI failed (and fails) in its burden to show that the due process requirements as to BBC Singapore are met, the district court correctly held that it could not exercise personal jurisdiction over BBC Singapore under Rule 4(k)(2). R&R at 15-18.

## III. THE CONSPIRACY CLAIM DOES NOT CONFER PERSONAL JURISDICTION OVER EITHER BBC DEFENDANT

Although NASI's first non-*Del Valle* argument is "Conspiracy Jurisdiction Exists Over All Defendants," Op.Br. at 32, that argument is addressed last here because it is both waived and meritless.

### A. NASI Waived and Failed to Preserve Its Conspiracy Theory

NASI waived its "BIS Loophole Scheme" argument – which coinage is brand new for this appeal – by devoting merely two summary paragraphs to the conspiracy issue at the tail end of its 30-page Objections. A.282 at 34. NASI's discussion of the conspiracy issue in its Objections is shorter than the full page the magistrate judge devoted to rejecting the argument. *See* R&R at 18-19. That discussion also pales in comparison to the seven pages of argument NASI chose to devote to its "BIS Loophole Scheme" concoction in Argument Section II-A alone, on top of the thirteen pages of its Statement of Facts devoted to the "Loophole" contention. *See* Op.Br. at 10-23; 32-38.

NASI thus devotes roughly one-third of its brief to this Court to an argument it deemed worthy of only two summary paragraphs at the tail end of its Objections to the R&R. Under this Court's established principles, NASI has waived this argument. *See In re Pan Am.*, 905 F.2d 1461-62 ("[I]f a party hopes to preserve a claim, argument, [or] theory, … she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to

recognize and rule on it.") (footnotes omitted); 11th Cir. R. 3-1 ("A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation … waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions[.]"). *See also Miller v. King*, 449 F.3d 1149, 1150 n.1 (11th Cir. 2006) (because a "claim was never raised in the district court" this Court would "not consider it for the first time on appeal"); *Narey v. Dean*, 32 F.3d 1521, 1526-27 (11th Cir. 1994) ("[A]ppellate courts generally will not consider an issue or theory that was not raised in the district court." (internal quotation marks omitted)).

### B.    Even If NASI Could Argue Its Conspiracy Theory, NASI Fails – and Failed – to Meet Its Burden of Showing the Theory Creates Jurisdiction

Waiver aside, the facts preclude the exercise of personal jurisdiction over either BBC Defendant based on "conspiracy jurisdiction," for a host of reasons.

NASI recognizes that a civil conspiracy claim requires: "'(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.'" Op.Br. at 35 (quoting *Koch v. Royal Wine Merchs., Ltd.*, 907 F. Supp. 2d 1332, 1346 (S.D. Fla. 2012)).[12] In addition, a conspiracy claim requires an intentional act

---

[12] Notably, in *Koch*, the court dismissed for lack of personal jurisdiction the two defendants who raised that challenge because, *inter alia*, "Plaintiff's vague

or scienter. *See*, *e.g.*, *Banco Latino Int'l v. Gomez Lopez*, 95 F. Supp. 2d 1327, 1336 (S.D. Fla. 2000) ("[u]nder Florida law, the causes of action of fraud and civil conspiracy both require scienter"); *Birmingham v. RoFx.net*, No. 21-cv-23472, 2022 WL 1686683, at *1 (S.D. Fla. May 26, 2022) (no personal jurisdiction where allegations did not allow a reasonable inference that the defendant played a "conscious role" in alleged conspiracy); *Cf. Churruca v. Miami Jai-Alai, Inc.*, 353 So. 2d 547, 549 (Fla. 1997) (to sustain an independent claim of tortious conspiracy, a plaintiff "must demonstrate that the conspirators acted with evil motive").

Just as in the district court, NASI fails to show each element of a viable claim for civil conspiracy.

*First*, there is no allegation or evidence of any communication – not even a single email – between either BBC Defendant and any of the other defendants (the two Goldwind entities and DSV-US) concerning the shipments or the ships' stops in Miami. Each communicated about these topics (if at all) only with *non*-parties. Absent such communications, the requisite agreement cannot exist. *See*, *e.g.*, *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1319 (S.D. Fla. 2014) ("'[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice.'")

---

allegations of communications into Florida are not attributed to either of the individual defendants and Plaintiff has not established their *connexity* to the specific torts at issue in this litigation." 907 F. Supp. 2d at 1339 (citing *Wendt*, 822 So. 2d at 1260) (emphasis in original). Exactly the same is true here.

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (alteration in original)); *Russo v. Fink*, 87 So. 3d 815, 819 (Fla. 4th DCA 2012) ("Notably, the complaint does not allege an agreement between [two of the defendants], which is the gist of conspiracy, merely that [one defendant] had knowledge of what [the other defendant] was doing. Because it never alleged that there was an agreement, it has failed to allege sufficient facts with respect to the conspiracy count.").

This Court's decision in *Mazer* illustrates that, absent an agreement to conspire, personal jurisdiction cannot be based on a conspiracy claim. The *Mazer* plaintiff alleged that the defendants conspired to steal manufacturing blueprints; one defendant challenged personal jurisdiction, which was based in part on the conspiracy theory. *See* 556 F.3d at 1269. Addressing the requirement that an agreement to conspire be shown, the Court stated: "there is no allegation directly connecting [defendant] to this initial agreement to steal the blueprints." *Id.* at 1282. Similarly here, NASI fails to show any agreement between the defendants.

*Second*, there was no tortious or wrongful act committed in Florida. As detailed above, BBC USA did nothing in or directed to Florida and BBC Singapore merely exchanged a few trivial emails with the Miami port agent. The purpose of the Miami stops was to comply with U.S. trade regulations – *i.e.*, a *lawful* activity – and the stops did comply, as proven by U.S. Customs' clearance of the shipments to Cuba. NASI alleged twice in the FAC that compliance (or not) with U.S. trade laws is "separate" from liability for trafficking under the Helms-Burton Act. A.189

- 43 -

¶ 58 n.14; ¶ 191. The supposed conspiracy was "to violate the Helms-Burton Act," *id.* ¶ 189 – *i.e.*, to traffic in a *Cuban* port. Compliance (or even attempted compliance) with unrelated federal trade laws while briefly in the Port of Miami cannot constitute a tortious act performed in or directed to Florida "in furtherance" of such a conspiracy. Customs clearance occurs daily at every U.S. port across the country; as a Florida court stated in rejecting conspiracy-based jurisdiction based on the sale of riot control weapons to a foreign country, "[f]ar from a conspiracy, this is a common, rather routine, business practice." *Condor, S.A. v. Plurinational State of Bolivia*, 352 So. 3d 921, 927 (Fla. 3d DCA 2022).

> *Mazer* again is instructive:

> [T]he complaint does not allege viable facts from which the inference could reasonably be drawn that APM was part of a conspiracy *either engineered* <u>*in Florida*</u> *or pursuant to which a tortious act in furtherance was committed* <u>*in Florida*</u>. Thus, APM is not subject to conspiracy-imputed personal jurisdiction under Florida's long-arm statute.

*Id.* at 1283 (all emphasis added). The *Mazer* holding is consistent with multiple Florida state-court decisions, which consistently require a Florida-based tort when analyzing conspiracy-based jurisdiction. In *April Industries, Inc. v. Levy*, 411 So. 2d 303 (Fla. 3d DCA 1982), for example, the court held there was no personal jurisdiction in Florida, even assuming a conspiracy was made in Florida, because the tortious act essential to causing the alleged wrong occurred in New York: "The gist of a civil action for conspiracy is not the conspiracy itself but the civil wrong

which is alleged to have been committed pursuant to the conspiracy. The alleged wrong to [plaintiff] occurred in New York, not Florida." *Id*. at 305-06.

In this case, as in *Mazer*, no tortious or other wrongful act occurred in Florida, and the purported conspiracy was not "engineered in Florida." If it existed (and it did not), it could only have been created in appellees' offices, all of which are outside of Florida: in China and Hong Kong (Goldwind), New Jersey (DSV-US), Singapore (BBC Singapore), and Texas (BBC USA). And, all of the non-parties that knew of or were involved in the Miami stops – which are not even mentioned in the civil conspiracy claim, *see* A.189, ¶¶ 189-194 – also acted outside of Florida: in New York / Massachusetts (GE), Denmark (LM, DSV-Denmark, BBC Esbjerg), and Germany (BBC Carriers).

Moreover, the purpose of the Florida stops was to comply with U.S. trade regulations – a lawful activity, as discussed above. The alleged trafficking under Helms-Burton could not have occurred until the ships reached Puerto Carupano, which NASI explicitly recognizes: "trafficking … occurred when the turbines [sic] were delivered *to Cuba*." Op.Br. at 34 (emphasis added). If the ships had never docked at Puerto Carupano, there could be no trafficking claim – and therefore no tort claim at all – which necessarily means that the tort occurred (to the extent it did at all) in Cuba. *See Russo*, 87 So. 3d at 818 ("[A] tort claim is deemed to have accrued where the last event necessary to make the defendant liable for the tort took place."); *April Indus.*, *supra* (same). The district court thus correctly

concluded that NASI "has not established that any Defendant committed a tortious act in Florida in furtherance of the alleged conspiracy to traffic the Property." R&R at 19 (citing *Mazer*, 556 F.3d at 183).

In sum, nothing happened in Florida enabling NASI to create a jurisdictional hook through NASI's (unpreserved) argument based on the "BIS Loophole Scheme."

NASI claims that *Del Valle* is to the contrary, because the Court "disagree[d]" with the district court's view in that case that the trafficking in confiscated property "occurred [only] in Cuba." Op.Br. at 35-36. Significantly, *Del Valle* did not involve – and the Court therefore did not address – conspiracy-based jurisdiction. The accepted *allegations* in *Del Valle* gave rise to the Court's conclusion that the hotel booking companies "trafficked in the confiscated properties [in Florida] by specifically targeting and 'selling' reservations at the Resorts *to Florida residents through their websites*." 56 F.4th at 1273 (emphasis in original). Here, in sharp contrast, the established *facts* show that neither BBC Defendant sold or targeted any Florida residents (nor did any other appellee) and, to the extent any appellee knew of and went along with GE's decision for the ships to stop in Miami, they did so for the lawful and unrelated purpose of complying with U.S. trade laws.

None of NASI's other authorities moves the needle either. *Execu-Tech Business Systems, Inc. v. New Oji Paper Co.*, 752 So. 2d 582 (Fla. 2000), on which

NASI bases much of its argument, Op.Br. at 32-33, 35, is inapposite. Those

defendants had pled guilty to criminal conspiracy to fix prices of fax paper

throughout the United States, thereby raising prices *to consumers in Florida*.

*Execu-Tech*, 752 So. 2d at 583. In the ensuing civil case, the court held that the

injury to Florida residents (including the plaintiff) occurred in Florida, which gave

rise to personal jurisdiction under the long-arm statute. *Id*. at 585. Here, however,

there is no injury in Florida, no statutory violation in Florida, and no Florida

plaintiff – all of which make *Execu-Tech* irrelevant. Similarly, every other case

cited by NASI finding conspiracy jurisdiction involved tortious conduct in Florida

or the targeting or injuring of Florida residents.[13] NASI fails to meet its burden to

show this case involves either.

  *Third*, NASI fails (and failed) at the hurdle of scienter. NASI does not plead

that any appellee intended to engage in a conspiracy. The conspiracy claim in the

FAC (¶¶ 189-94) does not incorporate or refer to other allegations in the FAC and

contains no allegations that any appellee intended to traffic in a confiscated port or

---

[13] *See AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1355 (S.D. Fla. 2009) (many co-conspirators were Florida residents and "purposely directed their activities at the residents of the forum"); *Burger v. Hartley*, 896 F. Supp. 2d 1157, 1165 (S.D. Fla. 2012) (defendants "did commit tortious acts within Florida"); *NHB Advisors, Inc. v. Czyzyk*, 95 So. 3d 444, 449 (Fla. 4th DCA 2012) ("the relevant question is … whether the tort, as alleged, occurred in Florida" and the conspiracy "aimed its tortious conduct at the state of Florida"); *Machtinger v. Inertial Airline Servs., Inc.*, 937 So. 2d 730, 735-36 (Fla. 3d DCA 2006) (the alleged "tortious acts occurred in Florida" and "caus[ed] injury to [plaintiff] in Florida").

to conspire to do so. And, NASI could not have (properly) made such an allegation, because no appellee could have known that NASI claimed "Puerto Carupano" based on the 1969 FCSC decision, which does not mention it at all. The only port referenced in the decision – along with properties as varied as agricultural land, livestock, factories, and railroads – is "Port of Cayo Juan Claro." A.189-1 at 14. While the FAC contains a bare allegation that "Port of Cayo Juan Claro," as well as "Port of Puerto Padre," are merely different names for the same port also known as "Puerto Carupano" (A.189, ¶ 25), that allegation does not change the reality that any person reviewing the FCSC decision (and there is no allegation or evidence that any Defendant did so) would have no reason to know: (a) that they are the same port; (b) that "Puerto Carupano" had been confiscated by Cuba; or (c) that a "United States national" could assert a claim regarding that port. *See* 22 U.S.C. §§ 6023(15) (defining "United States national") and 6082(a)(1)(A) (only a United States national may assert a trafficking claim).[14]

---

[14] NASI did not sufficiently allege that any appellee either (a) "knowingly and intentionally" trafficked in confiscated property – a required element of a Helms-Burton claim, 22 U.S.C. § 6023(13); or (b) intended to enter into a conspiracy to so traffic. The latter, in itself, bars conspiracy-based jurisdiction. Failure to plead this element was one of the grounds on which Defendants jointly moved to dismiss the action under Rule 12(b)(6), SA.215, Point II; the district court did not reach the issue, given the dismissal for lack of personal jurisdiction.

**C.    NASI Faces an Independent – and Dispositive – Problem: The Conspiracy Claim Is Barred by the Helms-Burton Act**

There is yet one more reason why the conspiracy claim cannot support personal jurisdiction over Defendants: it is expressly barred by the Helms-Burton Act. Section § 6082(f), entitled "Election of remedies," states that: (a) "any United States national that brings an action under this section [for trafficking] may not bring any other civil action or proceeding under the common law … that seeks monetary or nonmonetary compensation by reason of the same subject matter," and, conversely, (b) "any person who brings, under the common law or any provision of law other than this section, a civil action or proceeding for monetary or nonmonetary compensation arising out of a claim for which an action would otherwise be cognizable under this section may not bring an action under this section on that claim." 22 U.S.C. § 6082(f).

Because NASI asserted a trafficking claim against each of the five appellees, it may not also assert against any of them a claim "under the common law [*e.g.*, civil conspiracy], … by reason of the same subject matter."[15] If the conspiracy claim is barred by the election of remedies provision, as Defendants contend, then it follows that it cannot be the basis for exercising conspiracy-based jurisdiction over Defendants.

---

[15] Defendants' joint Rule 12(b)(6) motion to dismiss raised this argument as a basis for dismissal. SA.215, Point IV. The district court did not reach the issue, given the dismissal for lack of personal jurisdiction.

* * *

In sum, the Court should not even consider the "BIS Loophole Scheme" theory, which was not properly presented to the trial court. And, even if it chooses to, NASI fails in its burdens to show that conspiracy-based personal jurisdiction exists over either BBC Singapore or BBC USA based on a "conspiracy" that did not exist, and, even if had existed, the conspiracy could have had no connection to Florida and neither BBC Defendant could have knowingly agreed to join it.

## CONCLUSION

The Court should affirm the judgment of the district court.

Dated: July 3, 2023                    Respectfully submitted,

                                       *s/Christopher S. Carver*
                                       Christopher S. Carver
                                       Pedro A. Freyre
                                       AKERMAN LLP
                                       Three Brickell City Centre
                                       98 Southeast Seventh Street – Suite 1100
                                       Miami, FL 33131
                                       (305) 374-5600

                                       Martin Domb
                                       AKERMAN LLP
                                       1251 Avenue of the Americas, 37th Floor
                                       New York, NY 10020
                                       (212) 880-3800

                                       *Counsel for Appellees BBC Chartering USA,*
                                       *LLC and BBC Chartering Singapore Pte Ltd.*

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the word limit of Fed. R. App. P. 32(g) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,001 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Times New Roman style in 14-point font size.

*s/Christopher S. Carver*
Attorney

**CERTIFICATE OF SERVICE**

I certify that on July 3, 2023, I electronically filed the *Answer Brief of Appellees BBC Chartering USA, LLC, and BBC Chartering Singapore PTE Ltd.* with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Christopher S. Carver*
Attorney
